[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 21, 2008
THOMAS K. KAHN
CLERK

No. 06-15852
Non-Argument Calendar
_____

D. C. Docket No. 06-14023-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARC JACQUES,
a.k.a.Riggins Elan,
a.k.a. Jason Adams,
a.k.a. Walter King,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(February 21, 2008)**

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Marc Jacques appeals his conviction by a jury for possession with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), and the life sentence imposed as a result. On appeal, Jacques argues that (1) the evidence at trial was insufficient to support his conviction, (2) the district court abused its discretion in admitting hearsay that violated Jacques's right to confrontation, (3) the district court abused its discretion in denying Jacques's requested jury instruction on reasonable doubt and lack of evidence, (4) the district court abused its discretion in denying Jacques's motion for a new trial on the basis that a juror considered extrinsic evidence, and (5) the district court violated Jacques's Fifth and Sixth Amendment rights when it increased his sentencing range based on his status as a career offender, where his prior convictions were not alleged in the indictment or decided by a jury. For the reasons set forth below, we affirm.

**DISCUSSION**

On April 4, 2006, Jacques was arrested in a room at the Harbor Inn Motel in Stuart, Florida. Investigating officers testified that as Jacques walked from his vehicle to the motel room, he carried an object with a protruding handle covered by a white towel. A few seconds after Jacques entered the room, officers who had been waiting in the bathroom detained Jacques. When Jacques was arrested he was

2

standing within inches of a cooking pot that, according to the investigating officers' testimony, had not been in the room before Jacques's arrival and contained 31.6 grams of crack cocaine. Jacques testified as the sole witness in his defense at trial.

1. Sufficiency of the Evidence

"[W]e review *de novo* whether there is sufficient evidence to support the jury's verdict." *United States v. Ortiz*, 318 F.3d 1030, 1036 (11th Cir. 2003) (per curiam). We will affirm the jury's verdict "if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted). On review, we view the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor . . . ." *Id.* (internal quotation marks omitted). We review a district court's denial of a motion for judgment of acquittal according to the same standard. *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002) (per curiam).

The elements that must be proved beyond a reasonable doubt by the government in order to establish a violation of 21 U.S.C. § 841(a) are that the defendant: (1) knowingly and intentionally (2) possessed a controlled substance (3) with intent to distribute it. *See* 21 U.S.C. § 841(a)(1); *see also United States v.*

*Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989) (per curiam). All three elements can be proven by direct or circumstantial evidence. *Poole*, 878 F.2d at 1391–92.

Viewing the evidence presented at trial in the light most favorable to the government, a jury could conclude beyond a reasonable doubt that Jacques knowingly possessed cocaine base with the intent to distribute it. Accordingly, we hold that the district court did not err in denying Jacques's motion for judgment of acquittal.

2. Hearsay and the Confrontation Clause

"We review a district court's hearsay ruling for abuse of discretion." *United States v. Brown*, 441 F.3d 1330, 1359 (11th Cir. 2006), *cert. denied*, — U.S. —, 127 S. Ct. 1149, 166 L. Ed. 2d 998 (2007). "An erroneous evidentiary ruling will result in reversal only if the resulting error was not harmless." *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999) (citing Fed. R. Crim. P. 52(a)). "An error is harmless unless there is a reasonable likelihood that [it] affected the defendant's substantial rights." *Id.* (internal quotation marks omitted). We review de novo whether a defendant's Sixth Amendment right to confrontation was violated. *United States v. Yates*, 438 F.3d 1307, 1311 (11th Cir. 2006) (en banc).

Under the Federal Rules of Evidence, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove

4

the truth of the matter asserted" is inadmissible hearsay. Fed. R. Evid. 801(c), 802. Statements to officers generally, however, may be admitted as non-hearsay for the limited purpose of explaining the background of the officers' actions if the admission of such statements is not overly prejudicial. *United States v. Baker*, 432 F.3d 1189, 1209 n.17 (11th Cir. 2005).

The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "[I]f hearsay is 'testimonial,' . . . the Confrontation Clause prohibits its admission at trial unless (1) the declarant is unavailable, and (2) and the defendant has had a prior opportunity to cross-examine the declarant. *Baker*, 432 F.3d at 1203 (citation and footnote omitted). Non-hearsay aspects of out-of-court statements do not raise Confrontation Clause concerns. *See Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 2081–82, 85 L. Ed. 2d 425 (1985) (holding that admission of non-hearsay aspects of a confession, to prove what happened when an individual confessed, did not raise Confrontation Clause concerns); *United States v. Peaden*, 727 F.2d 1493, 1500 n.11 (11th Cir. 1984) (noting that the principles underlying the Confrontation Clause are not implicated by statements admitted for their non-hearsay value). In *Peaden*, we further noted that "[t]he value of a statement offered for nonhearsay purposes lies in its being

said rather than in its content. The only person the defendant needs to cross-examine, therefore, is the person who heard it, and is testifying to its utterance from personal knowledge." *Peaden*, 727 F.2d at 1500 n.11.

Jacques challenges testimony at trial by government agents concerning what they learned from a cooperating source who was not available to testify. The testimony was non-hearsay because it was not offered for the truth of the matter asserted. Furthermore, because the testimony was offered for a non-hearsay purpose, the Confrontation Clause was not implicated. Accordingly, we conclude that the district court did not abuse its discretion in admitting the challenged testimony, and that such testimony did not violate the Confrontation Clause.

3. Requested Jury Instruction

We review the district court's refusal to use a proposed jury instruction for abuse of discretion. *United States v. Dean*, 487 F.3d 840, 847 (11th Cir.) (per curiam), *pet. for cert. filed*, (U.S. Oct. 25, 2007) (No. 07-553). For the denial of a requested jury instruction to be reversible error a defendant must show that:

> (1) the requested instruction was a correct statement of the law, (2) its subject matter was not substantially covered by other instructions, and (3) its subject matter dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself.

*Id.* (internal quotation marks omitted). In deciding whether a defendant's

requested instruction was substantially covered by the actual charge delivered to the jury, we "need only ascertain whether the charge, when viewed as a whole, fairly and correctly states the issues and the law." *United States v. Gonzalez*, 975 F.2d 1514, 1517 (11th Cir. 1992).

The record shows that the subject matter of Jacques's requested instruction was substantially covered by the court's instruction on reasonable doubt and by the court's instruction that the jury consider all of the evidence in the case. Furthermore, the failure to give the requested instruction did not seriously impair Jacques's ability to defend himself because the court allowed Jacques to argue the lack of evidence to the jury. Accordingly, the district court did not abuse its discretion by declining to give Jacques's requested jury instruction.

4.  Motion for New Trial and Extrinsic Evidence

We review a district court's denial of a motion for new trial based on the jury's exposure to extrinsic evidence for abuse of discretion. *United States v. Ronda*, 455 F.3d 1273, 1296 n.33 (11th Cir. 2006), *cert. denied*, — U.S. —, 127 S. Ct. 1327, 167 L. Ed. 2d 86 (2007).

The government has the burden of establishing a defendant's guilt "solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial." *Farese v. United States*, 428 F.2d

7

178, 179 (5th Cir. 1970).  This theory "goes to the fundamental integrity of all that

is embraced in the constitutional concept of trial by jury."  *United States v. Rowe*,

906 F.2d 654, 656 (11th Cir. 1990) (internal quotation marks omitted).  Jurors

"have no right to investigate or acquire information relating to the case outside of

that which is presented to them in the course of the trial in accordance with

established trial procedure."  *Farese*, 428 F.2d at 179.  Nevertheless, "due process

does not require a new trial every time a juror has been placed in a potentially

compromising situation."  *Rowe*, 906 F.2d at 656 (internal quotation marks

omitted).  A new trial is required if the jury's consideration of extrinsic evidence

resulted in a reasonable possibility of prejudice to the defendant.  *Id.*

An apparent conflict exists among our prior decisions regarding whether

prejudice is presumed when a juror receives extrinsic information about the case.

We have so far declined to resolve the conflict because it has had no bearing on the

result in later cases, and as discussed below, we need not do so in the present case.

*See Ronda*, 455 F.3d at 1299 n.36.

We addressed a trial court's duty to investigate juror misconduct in *United

States v. Cousins*, 842 F.2d 1245 (11th Cir. 1988), stating that:

> [W]hen a defendant makes a "colorable showing" that jurors have
> been exposed to extrinsic influences, the district court, in the exercise
> of its discretion, must make sufficient inquiries or conduct a hearing
> to determine whether the influence was prejudicial.  However, there is

8

no *per se* rule requiring an inquiry in every instance. The duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. In other words, there must be something more than mere speculation.

*Id.* at 1247. If a defendant establishes prejudice, the burden shifts to the government to establish that the consideration of extrinsic evidence was harmless. *See Ronda*, 455 F.3d at 1299. To determine whether the government has met its burden, we consider the totality of the circumstances, including "(1) the nature of the extrinsic evidence; (2) the manner in which the information reached the jury; (3) the factual findings in the district court and the manner of the court's inquiry into the juror issues; and (4) the strength of the government's case." *Id.* at 1299–1300.

Jacques complains about a juror who allegedly drove past the motel where the offense took place. Under the totality of the circumstances, including the limited nature of the extrinsic evidence, the way in which it reached the juror, and the strength of the government's case, we conclude that any exposure to extrinsic evidence by the juror was harmless. Therefore, the district court did not abuse its discretion in denying Jacques's motion for new trial.

5. Prior Convictions

We review properly preserved constitutional claims de novo, but reverse

only for harmful error. *United States v. Paz*, 405 F.3d 946, 948 (11th Cir. 2005) (per curiam). A district court does not err by relying on prior convictions to enhance a defendant's sentence. *United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005). In *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 350 (1998), the Supreme Court held that a district court may consider prior convictions and use them to enhance a defendant's sentence even if those convictions were not alleged in the indictment or proved beyond a reasonable doubt. *Id.* at 244–46, 118 S. Ct. at 1231–32. Subsequent Supreme Court decisions, namely *Apprendi*,[1] *Blakely*,[2] and *Booker*,[3] have not disturbed that holding. *Shelton*, 400 F.3d at 1329. Accordingly, we must follow *Almendarez-Torres*.

The government made an adequate showing of the necessary convictions for the sentence enhancement under 21 U.S.C. § 841. Thus, the district court did not violate Jacques's Fifth and Sixth Amendment rights when it enhanced his sentence based on his prior convictions.

## CONCLUSION

Based on our review of the record and the parties' briefs, we affirm

---

[1] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[2] *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[3] *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Jacques's conviction and sentence as to the sufficiency of the evidence, the admission of out-of-court statements concerning the background of the investigation, the refusal to give Jacques's requested jury instruction, the denial of Jacques's motion for new trial, and the use of prior convictions to enhance Jacques's sentence.

**AFFIRMED.**